UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JENNIFER REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:17cv369 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant engaged in substantial gainful activity at times since the amended alleged onset date but there have been continuous 12-month periods in which she did not engage in substantial gainful activity (20 CFR 416.920(b) and 416.971 *et*

2

*seq*).

2. The claimant has the following severe impairments: coronary artery disease with a history of myocardial infarctions with quadruple coronary artery bypass grafting and coronary artery stenting; peripheral vascular disease with stenting of the left leg; fibromyalgia, diabetes mellitus with neuropathy, hypertension, COPD, degenerative joint disease of the left hip, and mild disc desiccation and narrowing with a small disc protrusion at L5-S1 that results in mild encroachment of the thecal sac. She has a very recent diagnosis of carpal tunnel syndrome which is reflected in the limitations of function with respect to the very recent period since January 2016 (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that, prior to January 2016, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she was not able to climb ladders, ropes or scaffolds at all and she could only occasionally kneel, crouch, crawl, balance, and use ramps and stairs. She could occasionally bend and stoop in addition to what is required to sit. Aside from use of ramps and stairs on an occasional basis, she could not work upon uneven surfaces. The claimant needed to avoid work within close proximity to open and exposed heights and open and dangerous machinery, such as open flames and fast-moving, exposed blades. The claimant was limited from concentrated exposure to excessive airborne particulate, dust, fumes, and gases and excessive heat, humidity, and cold, such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator, or sewage plant. Beginning with January 2016, the claimant has the residual functional capacity to lift and carry 10 pounds frequently and occasionally throughout the workday. She can occasionally push and pull 10 pounds throughout the workday. She can sit 4 hours at a time and for a total of 5 hours in an eight-hour workday. She can also stand and/or walk at least 3 hours in an eight-hour workday. The claimant is limited to frequent, not constant, fingering, feeling, gripping, and fine manipulation of small objects, such as a pen or paper clip, as well as to frequent, not constant, gross manipulation and handling, grasping, turning, and gripping of larger objects. She can frequently use foot controls. She should not climb ropes, ladders or scaffolds but she can occasionally use ramps and stairs, balance, bend, stoop, kneel, crouch, and crawl. The claimant should avoid work within proximity to open and exposed heights and open and dangerous machinery, such as open flames and fast-moving, exposed blades. She is also limited from concentrated exposure to excessive airborne particulate, dust, fumes, and gases and excessive heat, humidity, and

cold, such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator, or sewage plant. She requires a cane for prolonged ambulation and when upon uneven surfaces.

5. The claimant is able to perform her past relevant work for the period prior to January 2016 but not beginning with January 2016 (20 CFR 416.965).

6. The claimant was born on June 25, 1975 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity both for the period prior to January 2016 and for the period beginning January 2016, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 3, 2013, the date the application was filed (20 CFR 416.920(g).

(Tr. 22- 33).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on February 23, 2018. On April 6, 2018, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff originally alleged disability beginning January 1, 1999, because of diabetes mellitus, advanced coronary artery disease, fibromyalgia, back pain, and complications from a heart attack (Tr. 354). At a hearing with an ALJ on September 15, 2015, Plaintiff amended her onset date to April 3, 2013—the date of her SSI application (Tr. 324). The ALJ never issued a decision in that case, so Plaintiff appeared at a second hearing on July 8, 2016, and again amended her alleged onset date to allege that she was disabled between April 3, 2013 and June 2014, and then again from January 2016 onwards (Tr. 20, 43-46). On August 12, 2016, the ALJ issued a decision finding Plaintiff not disabled at any time since her SSI application date (Tr. 20-33).

Plaintiff was 37 years old as of the application date.  Plaintiff had at least a high school education.  In the 15-year look-back period, Plaintiff worked as a waitress and a hotel clerk. After the onset of her medical problems, Plaintiff worked part-time at a variety of jobs such as at Staffmark Investment, Richard's Restaurant, and Steak n' Shake.

In support of remand, Plaintiff first argues that the ALJ failed to properly consider her desire to work and her recent work efforts in relation to credibility.  Plaintiff claims that her efforts to maintain part-time employment bolsters her credibility concerning her impairment, and that the ALJ improperly used her work efforts to diminish her credibility.  A review of the record shows that the ALJ considered Plaintiff's work history, noting that her earnings had been generally rather low and sparse.  (Tr. 28).  The ALJ explained that Plaintiff worked after her amended alleged onset date and that some of that work was at substantial gainful activity levels.  The ALJ considered Plaintiff's initial testimony that she could have performed her seated job answering telephones during the initial period in question, and that it was only after Plaintiff's counsel coached her that she changed her testimony.  (Tr. 28). The ALJ appropriately assigned greater weight to Plaintiff's unprompted testimony.  This courts finds no error in the ALJ's analysis.  As the Commissioner points out, it is not the ALJ's job to find portions of the record to enhance credibility.  Rather, the ALJ's job is to apply the regulatory factors and to determine the extent to which the Plaintiff's symptoms can reasonably be accepted as consistent with the evidence of record.   Plaintiff has claimed that the ALJ ignored her assertion that she needed rest days between two consecutive part-time workdays.  However, the record shows that the ALJ considered Plaintiff's initial testimony that she would have been able to perform her seated job answering telephones, and that the impediment to working was not having a vehicle or a stable

6

place to stay (Tr. 55-56). The ALJ properly discounted Plaintiff's changed testimony regarding her work absences, due to obvious coaching from her attorney. This court finds that substantial evidence supports the ALJ's analysis regarding Plaintiff's work history and credibility.

Plaintiff next argues that the ALJ improperly overemphasized daily activities. Plaintiff claims that the ALJ's discussion of her daily activities glosses over the fact that she needed her rest days. The record shows that, consistent with the regulations and SSR 16-3p, the ALJ considered Plaintiff's daily activities, which he noted were, at most, only mildly limited (Tr. 24). The ALJ further observed that Plaintiff had worked most of the time since July 2014 (as a customer service representative and a waitress), albeit not always at levels that would constitute substantial gainful activity (Tr. 25, 49-53). The ALJ noted that Plaintiff was able to drive, keep her house clean, do laundry, care for her personal needs, play with her grandson, prepare meals, go out alone, shop, pay bills, handle bank accounts, and watch television and movies (Tr. 25, 28).

The ALJ considered Plaintiff's allegations about the nature of her symptoms stemming from her heart attacks in February 2012 and in March 2013 and from her other impairments. Specifically, the ALJ considered, among other things, Plaintiff's allegations that she has back and neck pain, is not able to walk a mile, and is able to lift just 15 pounds (Tr. 27). He further considered Plaintiff's allegation that her hip pops and feels like it moves out of place (Tr. 27). He noted that she alleged that she has a little swelling in her left leg; her legs feel weak and get tired easily; she has numbness, tingling, and pain in the left foot from neuropathy; and she has very little endurance, is fatigued, and takes naps (Tr. 27). He considered her complaints that she has used a cane at times; has hot flashes, chest pain, poor leg circulation; difficulty sleeping from pain; and balance problems; and gets dizzy easily (Tr. 27). Finally, he noted her complaints that

7

she has difficulty squatting, bending, standing, kneeling, climbing stairs, using her hands, and completing tasks (Tr. 27). As noted above, the ALJ's highly detailed RFC assessment accommodates many of these subjective complaints (Tr. 26).

The ALJ also considered the numerous medications Plaintiff took for her heart impairments, diabetes, back pain, and chronic obstructive pulmonary disease (Tr. 24, 27-28). The ALJ also observed that Plaintiff did not experience any medication side effects (Tr. 29). Finally, the ALJ considered other treatments consisting of quadruple coronary artery bypass graft surgery, stenting of the saphenous vein graft of the circumflex artery, and stenting of the left leg (Tr. 27). Clearly, the ALJ's decision shows that he correctly applied the regulatory factors for assessing subjective symptoms and that he appropriately found that Plaintiff's allegations were not consistent with the evidence of record. *See* 20 C.F.R. § 416.929(a) (in determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence).

As discussed above, the ALJ also noted that Plaintiff worked after her amended alleged onset date, and that some of that work was at substantial gainful activity levels (Tr. 28). He explained that Plaintiff's earnings record shows that her earnings have historically been low and sparse—and that they were actually higher after she applied for SSI (Tr. 28). The ALJ considered Plaintiff's initial testimony that she could have performed her seated job answering telephones during the initial period in question—and that it was only after Plaintiff's representative coached her that she changed her testimony (Tr. 28). The ALJ further cited Plaintiff's rather full range of daily activities, as well as her disinclination to follow her doctor's advice to stop smoking, to take

8

her medications as prescribed, and to check her blood sugar levels regularly (Tr. 28). Finally, the ALJ continued to analyze the medical evidence and noted that before early 2016 her physical examination findings were largely within normal limits (Tr. 29-31).

In light of all the above, this court finds that substantial evidence supports the ALJ's decision.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: June 4, 2018.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court